ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| NIVIA JOSEFINA RIVERA RIVERA<br><br>RECURRIDA<br><br>v.<br><br>DIALYS SELENIA RIVERA RIVERA Y OTROS<br><br>PETICIONARIOS | TA2026CE00374 | *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Caso Núm.: GB2025CV00056<br><br>Sobre: División o liquidación de comunidad de bienes hereditarios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparecen ante nos Dialys Selena Rivera Rivera, Modesto E. Rivera Adorno y Ángel M. Rivera Hernández (en adelante, parte peticionaria) mediante un recurso de *Certiorari* presentado el 27 de marzo de 2026 y solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario), el 3 de marzo de 2026 y notificada en la misma fecha. Mediante esta, el TPI declaró No Ha Lugar la reconsideración presentada por la parte peticionaria sobre asuntos relacionados al descubrimiento de prueba.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y **revocamos** la determinación recurrida.

**I.**

El 27 de enero de 2025, la señora Nivia Josefina Rivera Rivera (en adelante, señora Rivera o parte recurrida), instó una *Demanda*[1] sobre partición de herencia, designación de administrador y remoción de albacea. En esencia, alegó que, tras el fallecimiento de la señora Carmen Delia Rivera Hernández (en adelante, la causante), surgió una comunidad hereditaria entre ella, la señora Dialys Rivera y el señor Modesto Rivera, sobre determinados bienes, incluyendo un inmueble propiedad de la causante, y que resultaba necesario proceder con su liquidación, así como con la designación de un administrador y la remoción del albacea designado, el señor Ángel Rivera, por alegada inacción en el cumplimiento de sus funciones.

El 6 de marzo de 2025, la parte peticionaria presentó su *Contestación a la Demanda*[2] y, luego, el 10 de abril de 2025, presentó una *Segunda Contestación a la Demanda y Reconvención Enmendada*[3]. En términos generales, negó las alegaciones de la demanda y, mediante reconvención, planteó que, desde el 2016, la recurrida había asumido control exclusivo del inmueble perteneciente al caudal, administrándolo y percibiendo las rentas derivadas de su arrendamiento sin tener derecho a ello y sin rendir cuentas de las rentas recibidas ni a la causante en vida ni a los demás herederos tras su fallecimiento.[4] El 18 de julio de 2025, la recurrida presentó su *Réplica a Reconvención*[5].

Durante el trámite del caso y como parte del descubrimiento de prueba, la parte peticionaria presentó una *Moción en solicitud de orden*[6] en la cual le

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.

[2] Entrada Núm. 11 del SUMAC del TPI.

[3] Entrada Núm. 23 del SUMAC del TPI.

[4] El 29 de mayo de 2025 la señora Rivera presentó una *Primera Demanda Enmendada* y, el 7 de julio de 2025, los peticionarios presentaron su *Contestación a la Primera Demanda Enmendada*. Véanse Entradas Núm. 32 y 35 del SUMAC del TPI.

[5] Entrada Núm. 39 del SUMAC del TPI.

[6] Entrada Núm. 78 del SUMAC del TPI.

solicitó al TPI que, luego de que se vendiera el inmueble, ordenara a la parte recurrida a consignar el producto de la venta, así como el balance que tuviera depositado producto de las rentas cobradas y administradas por ella desde el año 2016.

El 3 de noviembre de 2025, el foro primario emitió una *Orden*[7] en la que dispuso que la parte recurrida debía cumplir con lo solicitado por los peticionarios, en cuanto a la consignación del producto de la venta del inmueble y el balance de las rentas cobradas y administradas por ella desde el año 2016.

El 18 de noviembre de 2025, la señora Rivera presentó una solicitud de reconsideración sobre la referida *Orden*, ya que, según alegó, debido a que la causante falleció el 17 de febrero de 2024, lo único que podía requerírsele era la consignación del dinero producto de las rentas cobradas desde esa fecha.[8]

El 26 de noviembre de 2025, la parte peticionaria se opuso a la reconsideración de la *Orden* alegando, entre otras cosas, que la señora Rivera había aceptado en el descubrimiento de prueba que ella estuvo arrendando y administrando la propiedad desde el 2016 y que se había negado a ofrecer información sobre las rentas recibidas desde entonces.[9]

Posteriormente, las partes continuaron presentando distintas mociones relacionadas con el descubrimiento de las rentas en controversia. La recurrida reiteró su postura en cuanto a que no se le podía obligar a entregar información sobre la administración de los bienes antes del fallecimiento de la causante.[10] Por su parte, los peticionarios sostuvieron que el dinero obtenido, desde el año 2016, pertenecía a la herencia y que la recurrida tenía la obligación de presentar evidencia de las rentas recibidas y del paradero de ese dinero.[11]

---

[7] Entrada Núm. 82 del SUMAC del TPI.
[8] Entrada Núm. 92 del SUMAC del TPI.
[9] Entrada Núm. 97 del SUMAC del TPI.
[10] Entrada Núm. 109 del SUMAC del TPI.
[11] Entrada Núm. 124 del SUMAC del TPI.

El 11 de febrero de 2026, los peticionarios presentaron una nueva *Moción en solicitud de que se ordene a la parte descubrir prueba*[12] en la cual solicitaron que se ordenara a la señora Rivera producir un desglose de las rentas recibidas por el alquiler del inmueble desde el año 2016 hasta la venta en 2025, así como evidencia de los gastos relacionados, incluyendo mantenimiento, contribuciones sobre la propiedad inmueble (CRIM) y mejoras.[13] Asimismo, alegaron que la negativa de la parte recurrida a suministrar dicha información constituía una actuación temeraria que, de ser permitida, podría conllevar un enriquecimiento injusto, al privar al resto de los herederos de su participación en las rentas generadas por un bien que forma parte del caudal hereditario.

La recurrida se opuso y, además de los planteamientos que ya había presentado al respecto, argumentó que la solicitud de los demandados era improcedente, por pretender obtener información relacionada con la administración de bienes en vida de la causante. A tales efectos, sostuvo que la causante gozaba de plena capacidad jurídica para administrar sus bienes hasta el momento de su fallecimiento, presunción que no fue derrotada por los peticionarios, quienes incluso admitieron dicha capacidad en el descubrimiento de prueba. Además, planteó que cualquier reclamación relacionada con la administración del inmueble previo al fallecimiento de la causante correspondía exclusivamente a esta última en vida.[14]

Evaluadas las posiciones de las partes, el TPI emitió una *Orden*[15] mediante la cual limitó el alcance del descubrimiento de prueba a las rentas generadas desde el fallecimiento de la causante, es decir, desde el 17 de febrero de 2024 hasta la fecha de la venta del inmueble, excluyendo el periodo anterior.

---

[12] Entrada Núm. 142 del SUMAC del TPI.
[13] Cabe mencionar que, según surge del expediente, el TPI no emitió determinación alguna respecto a las mociones en las Entradas Núm. 92, 97, 109 y 124.
[14] Entrada Núm. 144 del SUMAC del TPI.
[15] Entrada Núm. 146 del SUMAC del TPI.

Inconforme con dicha determinación, el 23 de febrero de 2026, la parte peticionaria presentó una *Reconsideración en cuanto a descubrir prueba en cuanto a rentas*[16], en la cual reiteró que la demandante había administrado el inmueble desde el año 2016, percibiendo rentas sin rendir cuentas, y que validar esa acción produciría un enriquecimiento injusto de su parte, en perjuicio de los demás herederos.

El 25 de febrero de 2026, la parte recurrida presentó una *Nueva oposición a reconsideración en cuanto a descubrir prueba*[17], en la cual insistió en que la controversia planteada por los peticionarios no formaba parte del pleito de partición de herencia, sino que constituía un intento de reabrir reclamaciones no adjudicadas en vida de la causante. Reiteró que la comunidad hereditaria surge únicamente al momento del fallecimiento, por lo que no existe obligación de rendir cuentas a coherederos respecto a actos realizados con anterioridad.

Atendidos los planteamientos de ambas partes, el 3 de marzo de 2026, el TPI emitió una *Resolución*[18] mediante la cual declaró No Ha Lugar la reconsideración, manteniendo su determinación de limitar el descubrimiento de prueba al periodo posterior al fallecimiento de la causante.

Inconforme, el 27 de marzo de 2026 la parte peticionaria compareció ante nos mediante el recurso de epígrafe y plantea como único señalamiento de error lo siguiente:

**ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA SALA DE BAYAM[Ó]N AL DECLARAR NO HA LUGAR LA RECONSIDERACIÓN PRESENTADA POR LOS DEMANDADOS-PETICIONARIOS, DEJANDO EN VIGOR LA ORDEN PERMITIENDO EL DESCUBRIMIENTO DE PRUEBA SOLO DESDE EL FALLECIMIENTO DE CARMEN DELIA RIVERA HERN[Á]NDEZ EL 17 DE FEBRERO DE 2024, ESTO EN CLARO MENOSPRECIO AL DERECHO DE LOS DEMANDADOS-PETICIONARIOS AL DESCUBRIMIENTO DE PRUEBA CONFORME A LA REGLA 23.1 DE PROCEDIMIENTO CIVIL DE**

---

[16] Entrada Núm. 148 del SUMAC del TPI.
[17] Entrada Núm. 153 del SUMAC del TPI.
[18] Entrada Núm. 158 del SUMAC del TPI.

**PUERTO RICO, DEJANDO EN ESTADO DE INDEFENCI[Ó]N A LOS DEMANDADOS- PETICIONARIOS.**

El 6 de abril de 2026 emitimos Resolución concediéndole a la parte recurrida diez (10) días para que se expresara sobre los méritos del recurso. Vencido el término sin su comparecencia, procedemos a resolver.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 209; *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo*, supra, pág. 372, citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank v. Zaf Corp. et al.*, 202

DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

De otra parte, como norma general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que esta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

### B. Descubrimiento de prueba

La Regla 23.1 de Procedimiento Civil dispone lo relacionado al del descubrimiento de prueba. 33 LPRA Ap. V, R. 23.1. En lo pertinente, dicha regla señala lo siguiente:

[L]as partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. *Id.* (Negrilla suplida).

El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias [...] para hacer valer sus derechos". *McNeil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021), citando a Rivera García, *Diccionario de términos jurídicos,* 3ra ed. rev., San Juan, Ed. LexisNexis, 2000, pág. 70.

Es un principio reiterado que el descubrimiento de prueba debe ser uno amplio y liberal. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 496 (2022); *Berríos Falcón, et al. v. Torres Merced,* 175 DPR 962, 971 (2009); *Rivera y otros v. Bco. Popular, supra,* pág. 152. Asimismo, nuestro Tribunal Supremo ha expresado que "los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes." *Cruz Flores et al. v. Hosp. Ryder et al., supra,* págs. 496-497. Esto debido a que, utilizando de manera adecuada este mecanismo, se aceleran los procedimientos, las transacciones y, se evitan sorpresas indeseables durante la celebración del juicio. *McNeil Healthcare v. Mun. Las Piedras II,* supra, pág. 672.

No obstante, nuestro ordenamiento establece dos restricciones a dicho mecanismo: (1) que la información objeto del descubrimiento no sea privilegiada y (2) que la misma sea pertinente al asunto o controversia. *Cruz Flores et al. v. Hosp. Ryder et al., supra; McNeil Healthcare v. Mun. Las Piedras II, supra,* pág. 273*; Rivera y otros v. Bco. Popular, supra.* En relación con el concepto de pertinencia, para propósitos del descubrimiento de prueba, este es mucho más amplio que el utilizado en el área del derecho probatorio para la admisibilidad de la prueba. *Alvarado v. Alemañy,* 157 DPR 672, 683 (2002); *García Rivera et al. v. Enríquez,* 153 DPR 323, 333 (2001); *Medina v. M.S. & D. Química PR, Inc.,* 135 DPR 716, 731 (1994).

Por ello, se puede admitir el descubrimiento de todos los asuntos que puedan tener cualquier relación posible con la materia que es objeto del litigio, aunque no estén relacionados con las controversias específicas que han sido planteadas en las alegaciones, siempre que exista una posibilidad razonable de relación con el asunto en controversia. *García Rivera et al. v. Enríquez, supra*, págs. 333-334.

De otra parte, los tribunales de instancia tienen amplia discreción para regular el alcance del descubrimiento de prueba, en tanto les corresponde garantizar una solución justa, rápida y económica de los casos, sin darle ventaja a ninguna de las partes. *Cruz Flores et al. v. Hosp. Ryder et al., supra*, págs. 496-497; *Rivera y otros v. Bco. Popular, supra*, págs. 153-154. Al fijar los términos para llevar a cabo dicho descubrimiento, el foro primario debe ponderar dos intereses de particular relevancia: de un lado, asegurar la pronta resolución de las controversias; y del otro, garantizar que las partes cuenten con una oportunidad real y suficiente para realizar un descubrimiento amplio, de modo que en la vista en su fondo no surjan sorpresas. *Rivera y otros v. Bco. Popular, supra*, págs. 154-155. El propósito fundamental del descubrimiento de prueba es permitir que las partes obtengan la información necesaria para la adecuada preparación del juicio, a fin de delimitar con mayor precisión los asuntos controversia y descubrir la verdad de lo ocurrido. *Id.*, pág. 156.

### C. Bienes que comprenden la comunidad hereditaria

La sucesión por causa de muerte se define como la transmisión de los derechos y de las obligaciones del causante que no se extinguen por su muerte. Art. 1546 del Código Civil, 31 LPRA sec. 10911. La sucesión se abre en el momento de la muerte del causante. Art. 1547 del Código Civil, 31 LPRA sec. 10912. A su vez, el Artículo 1552 del Código Civil dispone que "[l]a herencia comprende los derechos y las obligaciones transmisibles por causa de la muerte de una persona [...]. La herencia también comprende las

donaciones computables, así como los derechos y las obligaciones que le son inherentes después de abierta la sucesión. 31 LPRA sec. 10917.

De otra parte, el Artículo 1599 del Código Civil, 31 LPRA sec. 11071, establece que existe una comunidad hereditaria cuando concurre a la sucesión una pluralidad de personas con derechos en la herencia expresados en cuotas abstractas. Véase, además, *Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010); *Soc. de Gananciales v. Registrador*, 151 DPR 315, 317 (2000)(Sentencia); *Cintrón Vélez v. Cintrón De Jesús*, 120 DPR 39, 48 (1987). La comunidad hereditaria posee diversas características, entre ellas, que es forzosa, incidental, universal y transitoria. *Vega Montoya v. Registrador*, *supra*, pág. 88.

La comunidad hereditaria se extingue, entre otras formas, por la partición de la herencia. Art. 1610 del Código Civil, 31 LPRA sec. 11082. Esta partición puede hacerse por la vía testamentaria, convencional o judicial. Art. 1776 del Código Civil, 31 LPRA sec. 11643. La partición convencional se da cuando todos los titulares se ponen de acuerdo para realizarla. Art. 1779 del Código Civil, 31 LPRA sec. 11646. En los casos en que no exista un acuerdo unánime entre los coherederos, cualquiera de ellos puede instar una acción judicial para realizar la partición por esta vía. Art. 1780 del Código Civil, 31 LPRA sec. 11647.

La partición de la herencia comprende distintas etapas, siendo estas: el inventario, el avalúo, el pago de las deudas, la división y finalmente la adjudicación de los bienes. Art. 1774 del Código Civil, 31 LPRA sec. 11641. El inventario es la relación clara, precisa y detallada de los bienes, las deudas y las cargas que constituyen la herencia de manera que queden suficientemente identificados. Art. 1782 del Código Civil, 31 LPRA sec. 11661. Esto incluye el avalúo de cada uno de los bienes, las deudas y las cargas hereditarias al momento de la partición. Art. 1783 del Código Civil, 31 LPRA sec. 11662. Asimismo, se incluyen, además, una relación de las liberalidades

hechas a los legitimarios, la fecha en que se realizaron y su valor al momento de efectuarse. Art. 1784 del Código Civil, 31 LPRA sec. 11663.

El Código Civil dispone que, para poder fijar la legítima que corresponde a cada legitimario, el cómputo del caudal debe seguir las siguientes reglas: primero, al caudal relicto, valorado al momento de la partición, se le reducen las deudas y las cargas no testamentarias; y, segundo, a ese valor neto se le añade el valor de las liberalidades computables que hizo en vida el causante, calculado al momento en que se efectuaron. Art. 1787 del Código Civil, 31 LPRA sec. 11671. Se exceptúan de las liberalidades computables, entre otros, los regalos de costumbres y las hechas por el causante si han transcurrido diez (10) años o más desde que se hicieron hasta su fallecimiento. Art. 1788 del Código Civil, 31 LPRA sec. 11672.

No obstante, luego de determinar qué liberalidades son computables, las hechas a los legitimarios, entre vivos o por causa de muerte, se imputan a la legítima. Art. 1789 del Código Civil, 31 LPRA sec. 11673. Si estas exceden la legítima, se imputan a la parte de libre disposición, y si son inoficiosas, se reducen según lo dispone el Código. *Id.*

**III.**

En el presente caso, la parte peticionaria impugna la determinación del TPI de limitar el descubrimiento de prueba a las rentas generadas con posterioridad al fallecimiento de la causante.

Si bien los tribunales de instancia gozan de amplia discreción para regular el descubrimiento de prueba, dicha discreción debe ejercerse de forma que permita a las partes obtener la información necesaria para dilucidar adecuadamente las controversias ante su consideración.

En este caso, surge del expediente que la controversia entre las partes incluye alegaciones de que la recurrida administró el inmueble desde el año 2016, percibiendo rentas que —según se plantea— no fueron entregadas a la causante. De ser ello cierto, dichas sumas podrían incidir directamente sobre

la determinación de los bienes que componen el caudal relicto o, en su defecto, dar lugar a la aplicación de créditos a favor de la sucesión o al cómputo de liberalidades en el proceso de partición.

En ese contexto, la información solicitada guarda una relación razonable con las etapas de inventario y avalúo de la herencia, así como con los ajustes que procedan al momento de adjudicar las participaciones hereditarias.  Por tanto, limitar el descubrimiento exclusivamente al periodo posterior al fallecimiento de la causante impide una adecuada dilucidación de las controversias relacionadas con la composición del caudal y los ajustes correspondientes en la partición.

Así, concluimos que, bajo las circunstancias particulares de este caso, el foro primario incurrió en un ejercicio irrazonable de su discreción al delimitar el alcance del descubrimiento de prueba.

Conforme a lo anterior, procede expedir el auto de *certiorari* y **revocar** la determinación recurrida.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se **revoca** la determinación recurrida. En consecuencia, se devuelve el caso al foro primario para la continuación de los procedimientos conforme a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones